2014 CO 2

**Alva J. HICKERSON, a/k/a Al J. Hickerson, Petitioner**

v.

**Thomas J. VESSELS, Personal Representative of the Estate of Mary Walsh Vessels, a/k/a Mary W. Vessels, a/k/a Mary Agnes Vessels, a/k/a Mary Vessels, Respondent.**

**Supreme Court Case No. 12SC198**

Supreme Court of Colorado.

January 13, 2014

Andrew M. Low, John M. Bowlin, Davis Graham & Stubbs LLP, Denver, Colorado, Theodore W. Rosen, Lauren E. Mosse, Theodore W. Rosen, P.C., Denver, Colorado, for Petitioner.

J. Nicholas McKeever Jr., Sherman & Howard L.L.C., Denver, Colorado, Clifford L. Beem, A. Mark Isley, Beem & Isley, P.C., Denver, Colorado, William E. Brayshaw Denver, Colorado, for Respondent.

JUSTICE HOBBS delivered the Opinion of the Court.

¶ 1 We granted certiorari to review the Court of Appeals' judgment in *Vessels v. Hickerson*, No. 11CA0317, —— P.3d ——, 2012 WL 503664 (Colo.App. Feb. 16, 2012), which held that the doctrine of laches is not available as a defense to an action for collection of a debt that is timely filed within a statute of limitations period.[1] Here, the trial court allowed the laches defense, but the court of appeals ruled that Colorado's separation of powers doctrine prohibits a court from applying laches to shorten the filing period. We determine that the language of the statute of limitations and our case law do not support the court of appeals' decision.

¶ 2 In April 1989, Alva J. Hickerson signed a ten-year promissory note payable to Vessels Oil and Gas Company. Under the terms of the note, the debt was due for full payment as of April 1999. The holder of the note filed this action in January 2009 for collection of the full unpaid amount of the debt, plus interest. The six-year statute of limitations statute would have barred this action after April 2005, but Hickerson made partial payments on the note. Under the partial payment doctrine, the permissible time for filing an action for payment of the remaining unpaid balance is restarted be-

---

1. We granted certiorari to review the following issue:

    1. Whether the court of appeals erred in holding that the defense of laches is unavailable against a timely filed claim for collection of a promissory note, where the statute of limitations was extended by the partial payment doctrine.

cause a partial payment operates as a promise to repay the remaining debt.

¶3 The court of appeals' judgment would prevent a debtor from invoking the doctrine of laches as a defense to an action filed within the original statute of limitations period or any restarted limitations period. We hold that the separation of powers doctrine does not bar application of the defense of laches to a debt collection action filed within the original or restarted limitations period because laches does not conflict with the statute of limitations; and our case law, since early statehood, recognizes the application of equitable remedies to legal claims. Accordingly, we reverse the judgment of the court of appeals and remand this case to it for consideration of issues it did not reach.

## I.

¶4 Hickerson signed the promissory note at issue on April 12, 1989. The promissory note was payable to Vessels Oil and Gas Company in the amount of $386,063.00. The company later assigned its rights under the note to the owner of the company. Following the owner's death, the note passed to the owner's wife, Mary Vessels, who first initiated this lawsuit. At Mary's death, her son—Thomas Vessels, the Respondent in this case—was substituted as plaintiff at the trial court because of his status as personal representative of Mary's estate.[2]

¶5 The promissory note was due in full on April 12, 1999, and, until then, the note provided that the monthly payments on the note would be paid out of the proceeds from Hickerson's overriding royalty interest in an oil and gas lease in Louisiana. As part of the deal, the payments from the royalty interest were made directly to Vessels, and Hickerson had no part in the payment process. These payments continued, in varying amounts, until the filing of this lawsuit in

January 2009. As of August 2010, there was still $335,441.72 in principal and $385,222.91 in interest due on the note.

¶6 In determining that the lawsuit was timely filed, the trial court found that the six-year statute of limitations had started anew under the partial payment doctrine each time a royalty payment was made to Vessels. The trial court then entered judgment for Vessels in the amount of $720,664.63. On a motion for reconsideration on the issue of the laches defense, the trial court reversed its previous order and found that laches barred Vessels' claims.[3]

¶7 The court of appeals held, as a matter of law, that laches is unavailable when a new statute of limitations period starts under the partial payment doctrine and the debt collection action is filed within that period. It reasoned that the separation of powers doctrine precludes a common law doctrine that operates to shorten a legislatively prescribed limitations period: "In deference to the separation of powers doctrine, we are wary of invoking an equitable principle, such as laches, where the legislative branch of government has already made a clear policy judgment." *Vessels*, —— P.3d at ——, 2012 WL 503664, at *15

¶8 We granted Hickerson's petition for review. We reverse the judgment of the court of appeals and remand this case to it for consideration of issues it did not reach on appeal.

## II. Analysis

¶9 We hold that the separation of powers doctrine does not bar application of the defense of laches to a debt collection action filed within the original or restarted statute of limitations period because laches does not conflict with the statute of limitations; and our case law, since early statehood, recog-

---

**2.** For ease of reference, throughout this opinion we will refer to the plaintiff uniformly as "Vessels," regardless of who was actually the holder of the note at the time.

**3.** In this case, the trial court reasoned that the partial payment doctrine is equitable in nature, as is laches; thus, equity can apply to equity. We do not accept such a narrow view of Colora-

do's merger of law and equity into a unitary civil action. Our statutes and case law do not as a matter of law bar equitable remedies from being applied to legal claims if the facts of the case demonstrate the requisite prejudice, injury, and reliance factors. *See City of Thornton v. Bijou Irr. Co.*, 926 P.2d 1, 73–74 (Colo.1996).

nizes the application of equitable remedies to legal claims.

## A. Standard of Review

■ ¶ 10 We review *de novo* questions of law concerning the application and construction of statutes. *Freedom Colo. Info., Inc. v. El Paso Cnty. Sheriff's Dep't,* 196 P.3d 892, 897 (Colo.2008). We also review *de novo* questions of law concerning the separation of powers doctrine. *City of Greenwood Vill. v. Petitioners for Proposed City of Centennial,* 3 P.3d 427, 440 (Colo.2000). Where the interaction of common law and statutory law is at issue, we acknowledge and respect the General Assembly's authority to modify or abrogate common law, but only recognize such changes when they are clearly expressed. *Lombard v. Colorado Outdoor Educ. Ctr, Inc.,* 187 P.3d 565, 570 (Colo.2008). Unless a conflict with the statute exists, the pre-existing common law continues to apply. *See Smith v. Exec. Custom Homes,* 230 P.3d 1186, 1192 (Colo.2010).

## B. Defense of Laches in a Debt Collection Action

¶ 11 The parties devote considerable attention to the development of law and equity courts in England pre-dating Colorado's statehood, but we need not explore that history in this case. Law and equity have been merged in our state since the earliest times of statehood. *Am. Family Mut. Ins. Co. v. DeWitt,* 218 P.3d 318, 322 (Colo.2009). The General Assembly recognized this merger in 1877 when it enacted the Code of Civil Procedure.

> [T]he distinction between actions at law and suits in equity, and the distinct forms of actions, and suits heretofore existing are abolished, and there shall be in this State but one form of civil action for the enforcement or protection of private rights, and the redress or prevention of private wrongs, which shall be the same at law and in equity, and which shall be denominated a civil action. . . .

Code of Civil Procedure, ch. 1, § 1 (1877); C.R.C.P. 2 (2013). Since the merger, there are very few issues that remain distinguished based on a claim's historical roots. *See Churchill v. Univ. of Colo. at Boulder,* 285 P.3d 986, 1000 n. 10 (Colo.2012) (citing Dan B. Dobbs, *Law of Remedies* § 2.4(1) (2d ed. 1993), for the proposition that one of the only remaining distinctions is the question of the appropriate remedy in a particular case); *Am. Family Mut. Ins. Co.,* 218 P.3d at 322 ("Merger has not eliminated the difference between law and equity with regard to jury trials."). None of those issues appear in this case. Accordingly, we turn to whether the court of appeals erred in ruling that laches as a defense to Vessels' claim is precluded by the separation of powers doctrine.

■ ¶ 12 "The essential element of laches is unconscionable delay in enforcing a right under the circumstances, usually involving a prejudice to the one against whom the claim is asserted."[4] *Loveland Camp No. 83 v. Woodmen Bldg & Benevolent Ass'n,* 108 Colo. 297, 116 P.2d 195, 199 (1941); *see also Calvat v. Juhan,* 119 Colo. 561, 206 P.2d 600, 604 (1949); *Robbins v. People,* 107 P.3d 384, 388 (Colo.2005). "The elements of laches are: (1) full knowledge of the facts; (2) unreasonable delay in the assertion of available remedy; and (3) intervening reliance by and prejudice to another." *City of Thornton v. Bijou Irr. Co.,* 926 P.2d 1, 73 (Colo.1996) (internal quotations omitted). Laches requires "such unreasonable delay in the assertion of and attempted securing of equitable rights as to constitute in equity and good conscience a bar to recovery." *Loveland Camp No. 83,* 116 P.2d at 199; *see also Keller Cattle Co. v. Allison,* 55 P.3d 257, 260 (Colo.App.2002) ("The doctrine of laches permits a court to deny a party equitable relief.").

■ ¶ 13 The General Assembly has authority to enact statutes of limitation periods for the filing of claims in Colorado courts. *Dove v. Delgado,* 808 P.2d 1270, 1274–75 (Colo.1991). "The purpose of a statute of limitations is to promote justice, dis-

---

**4.** On remand, as the issue is not now before us, we leave to the court of appeals its review of the trial court's determination that the legal ele- ments of laches were established by the facts of this case.

courage unnecessary delay, and forestall the prosecution of stale claims." *Id.* at 1274. Courts ordinarily enforce a statutorily enacted limitations period. *Van Diest v. Towle,* 116 Colo. 204, 179 P.2d 984, 989 (1947) ("The modern tendency is to look with favor upon statutes of limitation, which are considered wise and beneficent in their purpose and tendency, . . . and are held to be rules of property vital to the welfare of society. . . ."). Colorado statutes of limitation, such as the six-year period in this case, prohibit the filing of the action after the prescribed period. *See* § 13–80–103.5(1)(a), C.R.S. (2013) (applicable to "all actions for the enforcement of rights set forth in any instrument securing the payment of or evidencing any debt. . . ."). For claims like the one here, the period begins to run when the debt becomes due. § 13–80–108(4), C.R.S. (2013).

¶ 14 In its decision in this case, the court of appeals ruled that laches was unavailable as a defense because its application would violate the separation of powers by shortening the period in which an action for collection of a debt may be filed. However, the language of the six-year statute of limitations does not support the court of appeals' conclusion. The statute plainly prohibits filing the action beyond the prescribed statute of limitations period, but it does not address the operation of laches to shorten the period. The court of appeals assumed that the statute embodies a legislative policy decision prescribing that a claimant, as a matter of law, must be allowed every day up to the expiration of the limitations period for filing the action. But, the statute contains no language stating, or necessarily implying, that the filing period cannot be shortened through application of an equitable defense.

¶ 15 Contrary to the court of appeals' assumption that a conflict exists between the statute and the common law, the statute provides only that an action to recover the debt is barred "six years after the cause of action accrues." § 13–80–103.5(1)(a), C.R.S. (2013) (stating that "[t]he following actions shall be commenced *within* six years after the cause of action accrues and not thereafter" (emphasis added)). The dictionary defines "within" as "not longer in time than, before the end or since the beginning of, during the course of . . . at any time during." *Webster's Third New Int'l Dictionary* 2627 (1971). In this context, the legislature's use of word "within"—in referring to the six-year period within which the action may be filed—recognizes that the court may proceed to entertain the claim rather than dismissing it for failure of timely filing.

¶ 16 Since the early days of statehood, we have recognized that laches is available as a defense in some circumstances to shorten the period for filing a claim, even though the claim has been timely filed within a legislatively prescribed statute of limitations period. *Great W. Mining Co. v. Woodmas of Alston Mining Co.,* 14 Colo. 90, 23 P. 908, 911 (1890); *Dunne v. Stotesbury,* 16 Colo. 89, 26 P. 333, 334 (1891); *O'Byrne v. Scofield,* 120 Colo. 572, 212 P.2d 867, 871 (1949).[5] The legislature has not acted to abrogate this common law doctrine, which it has done to some other areas of our common law. In this regard we contrast *Smith* where we held that the General Assembly in that statute had abrogated our common law tolling doctrine by clearly allowing statutory tolling for a type of construction defect claim. 230 P.3d at 1192 ("Thus, because the General Assembly has already taken into account the need for extra time to complete repairs by allowing for statutory tolling while such repairs are made pursuant to the notice of claim procedure, we hold that equitable tolling under the repair doctrine would be inconsistent with the CDARA and consequently cannot be applied in this case."). The General Assembly has not enacted a similar mechanism for claims arising under promissory notes.

---

**5.** There is also persuasive federal authority on this very subject. Judge Posner, writing for the Seventh Circuit in *Teamsters & Employers Welfare Trust of Illinois v. Gorman Bros. Ready Mix,* explained that "[i]t turns out that just as various tolling doctrines can be used to lengthen the period for suit specified in a statute of limitations, so laches can be used to contract it." 283 F.3d 877, 881 (7th Cir.2002). "This is regardless of whether the suit is at law or in equity, because, as with many equitable defenses, the defense of laches is equally available in suits at law." *Id.*

¶ 17 In *Great West Mining Co.*, the relevant statute of limitations required that fraud claims be filed within three years after the discovery of the fraud. 23 P. at 911. Despite that statute of limitations, we held that laches was still available as a defense. *Id.* In justifying use of laches, we explained that "[w]e cannot ... give this statute such a construction as will permit a party in all cases to stand idly by until the limitation of the statute has nearly run, and then claim that, by virtue of the statute, he is excused from the laches." *Id.* As explained in *O'Byrne*, "[p]articularly is this true where witnesses have died or their memories become dim or time and long acquiescence have obscured the nature and character of the [claim] or the acts of the parties or other circumstances give rise to presumptions unfavorable to its continuance." 212 P.2d at 871. *Great West Mining Co.* and its progeny demonstrate that, under Colorado's merger of law and equity, legislatively prescribed limitations periods do not ordinarily preclude a laches defense.

¶ 18 Thus, we conclude that the application of laches to shorten the statute of limitations period does not violate the separation of powers doctrine. Under the plain wording of the statute of limitation courts cannot—on the basis of a common law doctrine—*lengthen* the period allowed for filing the claim. "The statute fixes a limitation beyond which the courts cannot extend the time, but within this limit the peculiar doctrine of courts of equity should prevail." *O'Byrne*, 212 P.2d at 871 (quoting *Great W. Mining Co.*, 23 P. at 911) (recognizing that the tolling doctrine if applicable to a particular case stops the running of the statute of limitations rather than lengthening it). *See also C.W. Kettering Mercantile Co. v. Fox*, 77 Colo. 90, 234 P. 464, 464 (1925) ("The doctrine of equitable estoppel may in a proper case be invoked to prevent a party from relying upon a statute of limitations.").

## C. The Partial Payment Doctrine Does Not Preclude a Laches Defense

¶ 19 The partial payment doctrine has been part of our common law jurisprudence since at least 1883 when we decided *Buckingham v. Orr*, 6 Colo. 587, 589–90 (Colo.1883). In Colorado, under this doctrine, where a debtor voluntarily makes a payment, the payment constitutes a promise to pay the remaining debt and operates to restart the statute of limitations period. *Buckingham*, 6 Colo. at 589–90; *Dodge v. East*, 100 Colo. 36, 64 P.2d 1270, 1271 (1937) ("[V]oluntary payments made by the debtor [interrupt] the operation of the statute of limitations."); *Holmquist v. Gilbert*, 41 Colo. 113, 92 P. 232, 233 (1907) (holding that the partial payment by a trustee does not revive a debt outside the statute of limitations where the trustee was an agent of both the creditor and debtor).

¶ 20 While the court of appeals recognized that the partial payment doctrine is a part of our common law, it determined that restarting the limitations period thereunder necessarily means that a court cannot allow laches to shorten the restarted six-year period: "the General Assembly has seemingly approved of the partial payment doctrine, or, at least, recognized its existence and not changed it...." *Vessels*, — P.3d at p. —, 2012 WL 503664, at *15 (citing § 13–80–113, C.R.S. (2013) and *Lieske v. Swan*, 93 Colo. 396, 26 P.2d 807, 808 (1933)). The court of appeals went on to state, "In deference to the separation of powers doctrine, we are wary of invoking an equitable principle, such as laches, where the legislative branch of government has made a clear policy judgment." *Id.* However, as we have discussed above, the language of the six-year statute of limitations does not prohibit shortening the period when the facts of the case establish a laches defense.[6] The General Assembly has not

6. There are four sections of the Colorado Revised Statutes that refer to the partial payment doctrine. §§ 13–80–113 to 116, C.R.S. (2013). Section 113 requires that for a payment to fall within the partial payment doctrine, it must be in writing. Section 114 protects joint debtors from losing protection of the statute of limitations by way the actions by other joint debtors. Section 115 states that an endorsement is insufficient to prove partial payment for the purpose of reviving a claim outside the statute of limitations. Finally, section 116 limits recovery under the partial payment doctrine to only those debtors who actually revived the debt, not other joint debtors.

preempted or replaced Colorado's common law partial payment doctrine, and the separation of powers doctrine does not preclude its continued operation as a matter of common law. In *Lieske*, for example, we construed legislative intent as clearly evidencing the General Assembly's choice not to interfere with the general rule concerning the effect of the payment of interest on a debt otherwise barred. 26 P.2d at 808. That general rule is that "the payment of interest, before the running of the statute, removes the demand therefrom...." *Id.* at 808. We derive from *Lieske* the proposition that the General Assembly codified only some aspects of the partial payment doctrine instead of preempting it.

¶ 21 In sum, we hold that laches is not precluded as a matter of law in cases involving the original or restarted statute of limitations period.

### D. Application to this Case

¶ 22 In this case, once the debt became due under the note in April 1999, Vessels would have been barred from instituting an action to collect the remaining portion of the debt after April 2005. However, because Hickerson made partial payments to Vessels, the six-year statute of limitations period restarted with each such payment. Accordingly, the trial court had authority to entertain this lawsuit filed in January 2009.

¶ 23 Because, as a matter of law, laches is not precluded as a defense to shorten an original or restarted statute of limitations period, we reverse and remand this case to the court of appeals to review the trial court's determination that Hickerson established the elements of a laches defense under the facts of this case. Additionally, we remand the question of attorney's fees to the court of appeals because its resolution is dependent on resolution of the laches issue.

The sections of the 2013 Colorado Revised Statutes that relate to the partial payment doctrine existed in large part in the 1921 Compiled Laws of Colorado. C.L. §§ 6392, 6414, 6145, 6416, *Limitations* (1921). Beyond these sections, the General Assembly has not provided clear statutory authority limiting or setting out the identifiable parameters of the partial payment doctrine such that the courts are precluded from applying the common law. The General Assembly has, at most, identified circumstances under which the doctrine will apply.

### III. Conclusion

¶ 24 Accordingly, we reverse the judgment of the court of appeals and remand this case to it for resolution of all remaining issues on appeal it did not previously reach.