Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's homepage at
http://www.courts.state.co.us. Opinions are also posted on the
Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
June 20, 2016

**2016 CO 45**

**No. 13SC768, <u>Hutchins v. La Plata Mountain Res., Inc.</u>—Limitations of Actions—
Acknowledgments of Existing Debt—Form and Essential Elements of
Acknowledgements.**

Hutchins and Gasper petitioned for review of the court of appeals' judgment
affirming the district court's ruling in favor of La Plata, in an action brought by La Plata
to collect on certain debentures issued by Leadville Mining and foreclose on a deed of
trust securing the debts. Although Leadville's authorized agent had signed documents
acknowledging its obligations for the amounts owed on other similar debentures held
by Hutchins and Gasper, which were secured by the same deed of trust, the court of
appeals reasoned that because these documents lacked the two-thirds consent required
for modification of the debentures, the included acknowledgments were insufficient to
restart the applicable limitations period. The court of appeals therefore concluded, as
had the district court, that the statute of limitations had run on any action by Hutchins
and Gasper to collect on the debts or foreclose on the deed of trust.

The supreme court reversed the judgment of the court of appeals, holding that
because the documents in question were in writing, were signed by Leadville, and
contained a clear and unqualified acknowledgement of the debt owed to Hutchins and

Gasper, they constituted a new promise to pay, establishing a new accrual date and effectively extending the limitations period on collection of the debt, whether or not the documents in question also successfully modified the terms of the debentures.

# The Supreme Court of the State of Colorado

2 East 14th Avenue • Denver, Colorado 80203

## 2016 CO 45

### Supreme Court Case No. 13SC768
*Certiorari to the Colorado Court of Appeals*
Court of Appeals Case No. 11CA156

#### Petitioners:

Scot B. Hutchins and John H. Gasper,

v.

#### Respondent:

La Plata Mountain Resources, Incorporated.

### Judgment Reversed
*en banc*
June 20, 2016

John H. Gasper, pro se
  *Fishers, Indiana*

**Attorneys for Petitioner Scot B. Hutchins:**
Davis Graham & Stubbs LLP
Andrew M. Low
Kyle W. Brenton
  *Denver, Colorado*

**Attorneys for Respondent:**
Gordon & Rees LLP
John R. Mann
  *Denver, Colorado*

**JUSTICE COATS** delivered the Opinion of the Court.
**JUSTICE HOOD** dissents, and **JUSTICE MÁRQUEZ** and **JUSTICE GABRIEL** join in the dissent.

¶1 Hutchins and Gasper petitioned for review of the court of appeals' judgment affirming the district court's ruling in favor of La Plata, in an action brought by La Plata to collect on certain debentures issued by Leadville Mining and foreclose on a deed of trust securing the debts. Although Leadville's authorized agent had signed documents acknowledging its obligations for the amounts owed on other similar debentures held by Hutchins and Gasper, which were secured by the same deed of trust, the court of appeals reasoned that because these documents lacked the two-thirds consent required for modification of the debentures, the acknowledgments included in them did not have the effect of extending the due date of the Hutchins and Gasper debentures, and therefore did not restart the limitations period for collection of the respective debts. The court of appeals therefore concluded, as had the district court, that the applicable statute of limitations had run on any action by Hutchins and Gasper to collect on the debts or foreclose on the deed of trust, leaving La Plata as the sole secured creditor.

¶2 Because the documents in question were in writing, were signed by Leadville, and contained a clear and unqualified acknowledgement of the debt owed to Hutchins and Gasper, they constituted a new promise to pay, establishing a new accrual date and effectively extending the limitations period on collection of the debt, according to the statutes and case law of this jurisdiction, whether or not the documents in question also successfully modified the terms of the debentures. The judgment of the court of appeals is therefore reversed.

# I.

¶3     In 2003, La Plata Mountain Resources, Inc., brought actions against Leadville Mining Corporation, Scot Hutchins, John Gasper, and other holders of debt instruments, denominated "debentures,"[1] issued by Leadville, seeking to collect on those debentures held by La Plata and to foreclose on a deed of trust, which secured all of Leadville's outstanding debentures. La Plata also sought a determination that only it among the holders of the remaining outstanding debentures secured by the same deed of trust had filed within the applicable statute of limitations, and therefore that only it among the outstanding debenture holders had a secured position. Hutchins and Gasper held interest in other of the debentures secured by the same deed of trust.

¶4     The district court held a three-day bench trial, resulting in lengthy, undisputed factual findings. As relevant here, the district court found that Leadville owned hundreds of mining properties in Lake and Park Counties. In 1987, in an effort to obtain $3.3 million of operating cash, Leadville created fifteen convertible debentures secured by a single deed of trust encumbering the bulk of Leadville's properties. While the amount owed on each debenture varied according to the sum loaned by each investor, the debentures were otherwise identical. By the time of trial, some debentures had been converted to stock or released, but seven remained outstanding. The debentures were originally scheduled to mature and pay in full, with interest, on

---

[1] A "debenture" is at times taken to refer to an unsecured debt. See, e.g., Black's Law Dictionary 486 (10th ed. 2014) ("A debt secured only by the debtor's earning power, not by a lien on any specific asset."). Because the debt instruments at issue here are self-designated as "debentures," and that terminology is used by the parties and lower courts, we continue to use it.

October 31, 1989. On several occasions, the holders gave consent to extend the maturity dates of the debentures, ultimately until December 31, 1997.

¶5 At the time of trial, the parties each held some interest in the outstanding debentures. In 2002, as a form of compensation, several debenture holders transferred partial interests in five of the debentures to Hutchins, a retired attorney who had served as CEO of Leadville, and Gasper, a mining engineer who had served as President of Leadville. Around the same time, La Plata, which the district court concluded, "was formed for the sole purpose of acquiring and enforcing the 1987 debentures," acquired interest in three of the debentures.

¶6 In late 2003, Hutchins and Gasper were facing what the parties agreed was a six-year statutory bar to sue on the debt under the 1997 due date. According to the testimony at trial and trial exhibits, Hutchins was still working with Leadville to re-open the mines and worried that a suit to collect would jeopardize Leadville's refinancing efforts and lead to bankruptcy proceedings. Hutchins therefore retained counsel to draft documents to be executed by Leadville and the other debenture holders to postpone their deadline to sue. Aside from the particulars related to each holder, all of the documents were identical. The 2003 documents acknowledged the debt and purported to extend the maturity dates of the debentures and waive any defenses to collection that might otherwise be available to Leadville. While a number of debenture holders, including Hutchins and Gasper, signed the documents executed by Leadville, La Plata did not.

4

¶7     It was not disputed that La Plata's action on the debt, which it filed in early 2003, fell within the limitations period.  The primary issue litigated at trial was therefore whether the 2003 documents extended the limitations period for the other debenture holders, and the arguments focused on a term in the original debentures requiring for their modification the "consent of the holders of 66-2/3% in aggregate principal amount of the outstanding debentures."[2]   Hutchins and Gasper contended that the term "principal amount" referred to the instrument's original stated amount to be repaid at maturity and therefore that Hutchins and the other consenting debenture holders collectively held more than 66 2/3% of the aggregate stated principal amount.  By contrast, the district court interpreted the consent provision to require that the 66 2/3% be calculated based on the principal amount that remained unpaid at the time the holders were asked to agree to the proposed 2003 extension.  Finding that some of the debentures had been converted to stock and were therefore no longer a debt owed by Leadville, the district court found that the signers of the 2003 documents did not meet the required percentage of outstanding debentures required for their modification.

¶8     The district court did not explicitly address the argument raised in the written submissions of Hutchins and Gasper to the effect that the 2003 documents separately contained a written and signed acknowledgment of the debt, and instead it simply ruled that as the result of the documents' failure to successfully modify the debentures,

---

[2] It appears well-established, and was uncontested, that tolling the statute of limitations on the debt also tolls the statute of limitations for foreclosure on the deed.  See W.Q.F., Annotation, Part Payment or Acknowledgment of Indebtedness on Bond or Note as Tolling Statute on Mortgage Securing Same, 41 A.L.R. 822 (1926); Du Bois v. First Nat'l Bank, 96 P. 169, 171 (Colo. 1908).

5

the limitations period ran in 2003, leaving La Plata as the only holder of debentures secured by the deed of trust on Leadville's assets. On appeal Hutchins and Gasper renewed their assertion that the acknowledgments included in the 2003 documents themselves effectively restarted the limitations period. Although the court of appeals similarly focused on the two-thirds consent requirement and similarly found the 2003 documents invalid for failure to satisfy the requirements for modification of the debentures, it cursorily rejected the claim of extension by written acknowledgement of the debt, stating that the 2003 documents failed to extend the limitations period under that theory because they were not "solely" an acknowledgment of the debt, but were an unsuccessful attempt to modify the debentures.

¶9 Hutchins and Gasper petitioned this court to review the court of appeals' rejection of its claim of extension of the due date by written acknowledgment.

**II.**

¶10 A cause of action to collect a debt accrues when the debt becomes due. § 13-80-108(4), C.R.S. (2015). Since early common law, it has been universally accepted that a new promise to pay effectively removes the bar of any applicable statute of limitations by creating a new debt, with a new due date; and that a partial payment constitutes an implicit promise to pay. See Van Diest v. Towle, 179 P.2d 984, 987 (Colo. 1947) (recounting in detail the history of the doctrine). The question precisely what circumstances an acknowledgment of a debt, other than by partial payment, would constitute an implicit promise to pay sufficient to create a new debt, with a new due date, had been the subject of debate and development over many years; however, at

6

least by the time of <u>Van Diest</u>, this jurisdiction had come to align itself with what the Restatement (Second) of Contracts now refers to as the "modern rule"—that an acknowledgment is effective to extend the running of the statute of limitations, as long as it fairly implies a new promise. § 82, cmt. c (1981).

¶11     While the acknowledgement of the debt must be clear, to avoid "piling implication upon implication," <u>Van Diest</u>, 179 P.2d at 988, and unqualified, in the absence of "accompanying circumstances, which repel the presumption of a promise or intention to pay," <u>id.</u>, such an acknowledgment of indebtedness is sufficient to constitute the requisite new promise, <u>id.</u>; <u>see also</u> Restatement (Second) of Contracts § 82(2) ("The following facts operate as such a promise unless other facts indicate a different intention: (a) A voluntary acknowledgment to the obligee, admitting the present existence of the antecedent indebtedness . . . ."). In addition, for nearly a century, by statute in this jurisdiction, an acknowledgement or promise must be in writing and signed by the promisor "to take a case out of the operation of the statute of limitations." § 13-80-113, C.R.S. (2015). That an implicit promise to pay, either in the form of a partial payment, <u>see, e.g.</u>, <u>Hickerson v. Vessels</u>, 2014 CO 2, ¶ 19, 316 P.3d 620, 625, or an acknowledgment meeting these conditions, <u>see, e.g.</u>, <u>Drake v. Tyner</u>, 914 P.2d 519, 522 (Colo. App. 1996), will extend the statute of limitations has remained, largely unquestioned, the law of this jurisdiction.

¶12     Further, because the theoretical basis for this proposition, or doctrine, is that the "new promise is sufficiently supported by the consideration of the past debt," <u>Van Diest</u>, 179 P.2d at 989, such a promise need not appear as an enforceable agreement to

be effective in extending the limitations period. Quite the contrary, although for evidentiary purposes it must be in writing and signed, to the extent the acknowledgment, or new promise to pay, were made conditional upon the fulfillment of some additional requirement or a promise in exchange for which it was given, it would fail the requirement that it be unqualified or unequivocal. It is generally held that an implicit promise to pay only upon the fulfillment of some condition can become an unqualified promise to pay creating a new debt, with a new due date, only upon the fulfillment of that condition. See Restatement (Second) of Contracts § 91. At that point, the implicit promise would no longer be qualified.

¶13 Notwithstanding La Plata's contention to the contrary, by stating that "[Leadville] hereby acknowledges and agrees that the Current Holders . . . are the holders of the Debenture" and "[Leadville] hereby confirms and reaffirms that the Debenture (a) remains issued and outstanding . . . and (d) is secured by the Modified Deed of Trust," the 2003 documents contain a clear and unqualified acknowledgment of Leadville's indebtedness. In the absence of any expression of unwillingness or even conditional willingness to pay, Leadville's acknowledgment of its debt and confirmation that the debt remains unpaid and continues to accrue interest constitutes the requisite implicit promise to pay. To the extent the ancient cases relied on by La Plata hold that in addition to an acknowledgment of an existing debt, some further promise or at least expression of intent or willingness to pay is required, those cases have not represented the law of this jurisdiction for more than a half-century.

¶14　To the extent La Plata argues, as apparently the court of appeals believed to be the case, that Leadville's acknowledgment of its outstanding debts was nevertheless void and ineffective to renew the debt for the reason that it was included in a document failing in its purpose to modify the terms of the debentures, we find that argument unpersuasive. Whether, as La Plata contends but Hutchins disputes, the 2003 documents amounted to a contract, Leadville's acknowledgment of its debts was not equivocal or conditioned on the fulfillment of any condition by the debenture holders. By the same token, while the wording of the documents themselves lends support to Hutchins's assertion that the documents were drafted to include several separate and distinct legal bases permitting the debt holders to withhold collection efforts with impunity, it is at least clear from the language of the documents themselves that the acknowledgment is also not conditioned on the successful modification of the terms of the debentures. And to the extent the acknowledgment could somehow be considered given in exchange for a promise not to attempt collection before expiration of the existing limitations period, that condition would obviously have been fulfilled and no longer a qualification on the acknowledgment by the time the existing limitations period ran.

¶15　Finally, to the extent La Plata suggests that regardless of any new promise to pay by Leadville, the date upon which the debentures would become due could not be changed without modifying the debentures according to their own terms, that theory was clearly not the basis of the court of appeals' ruling, which implied that an acknowledgment contained in a separate signed writing of its own may well have

extended the limitations period, nor has that argument been sufficiently developed in this court. Whether or not parties might effectively limit collection of a debt to a period shorter than otherwise permitted by law, it is hardly self-evident that an agreement creating a debt implicitly nullifies the effect of a long-established doctrine of law governing the applicability of statutory limitations periods merely by specifying a due date and the requirements for modification of the agreement, and La Plata has offered no authority for such a proposition.

¶16    Because the documents in question were in writing, were signed by Leadville, and contained a clear and unqualified acknowledgement of the debt owed to Hutchins and Gasper, they constituted a new promise to pay, establishing a new accrual date and effectively extending the limitations period on collection of the debt, according to the statutes and case law of this jurisdiction, whether or not the documents in question also successfully modified the terms of the debentures. In light of our determination that the lower courts erred in failing to find that Leadville's acknowledgment established a new accrual date for the outstanding debentures, we consider it unnecessary to address the claim of Hutchins and Gasper concerning waiver of Leadville's defenses.

### III.

¶17    The judgment of the court of appeals is therefore reversed and the case is remanded for further proceedings consistent with this opinion.

**JUSTICE HOOD** dissents, and **JUSTICE MÁRQUEZ** and **JUSTICE GABRIEL** join in the dissent.

JUSTICE HOOD, dissenting.

¶18    The majority concludes that documents signed by Leadville satisfied the requirements for an acknowledgment of a debt, even though (1) these documents were proposed amendments to the debentures at issue, not independent acknowledgments, and (2) these proposed amendments did not satisfy the parties' contractual requirements for modifying the debentures. In my view, the failed amendments were void; thus, so was the attempted acknowledgment of the debt contained within them. The majority instead perceives in these failed amendments new promises by Leadville to pay Hutchins and Gasper, new promises that established a new accrual date and effectively extended the applicable statute of limitations. Maj. op. ¶ 2. But in recognizing these promises, the majority enforces a fundamental change to the debentures—namely their due date—even though this change did not comport with the parties' agreed-upon process for modification. Because the majority circumvents the parties' contractual arrangement, I respectfully dissent.

¶19    The trial court concluded that the loan extension agreements were void because they constituted a "modification" to the debentures requiring consent of two-thirds of the outstanding debtholders, and Leadville failed to obtain the requisite consent.

¶20    Petitioners appealed, arguing in part that the two-thirds consent requirement did not apply. The court of appeals rejected this argument, concluding that the acknowledgement and waiver purported to modify the debentures and were therefore subject to the two-thirds consent requirement:

1

> [T]he 2003 extension agreements clearly and unambiguously operated as a <u>modification</u> of the debentures and not solely, as Hutchins contends, as an acknowledgment of the debt. The operative terms of the agreements specified an intent to extend the debentures' maturity dates by modifying and amending the terms of the debentures. Thus, we conclude that, consistent with the plain meaning of their language, the 2003 extension agreements purported to modify the terms of the debentures and therefore required agreement of two-thirds of the debenture holders.

<u>La Plata Mountain Res., Inc. v. Leadville Mining Corp.</u>, No. 11CA0156, slip op. at 9–10 (Colo. App. June 6, 2013) (citation omitted). Like the trial court, the court of appeals concluded that the requisite consent had not been obtained.

¶21    I agree with the trial court and the court of appeals. While Leadville unquestionably acknowledged its debt to Hutchins and Gasper, that acknowledgment—purporting to extend the debentures' maturity date to December 31, 2003—was contained in a document entitled, "Allonge[1] and Amendment to Leadville Corporation 12% Convertible Debenture Due October 31, 1989" ("Amendment"). On its face, the Amendment states that it is to be attached to "and made a part of" the debenture. Thus, the acknowledgment on which the majority relies was part and parcel of a proposed amendment to the debenture, which had to be approved by "the holders of 66–2/3% in aggregate principal amount of the outstanding Debentures." The

---

[1] An "allonge" is a "slip of paper sometimes attached to a negotiable instrument for the purpose of receiving further indorsements when the original paper is filled with indorsements." <u>Allonge</u>, <u>Black's Law Dictionary</u> (9th ed. 2009); <u>see also</u> <u>Lamson v. Commercial Credit Corp.</u>, 531 P.2d 966, 968 (Colo. 1975) ("The subject indorsement was typed on two legal size sheets of paper. It would have been physically impossible to place all of the language on the two small checks. Therefore, the indorsement had to be 'affixed' to them in some way. Such a paper is called an allonge.").

division concluded that this requirement had not been satisfied, and that determination is not before us.

¶22 I am not persuaded otherwise by Hutchins's and Gasper's contention that the amendment was actually intended to achieve three separate purposes (i.e., a waiver, an acknowledgment of the debt, and a modification), and that even if the modification failed, the waiver and acknowledgment were valid. This argument ignores the form in which Hutchins and Gasper chose to accomplish their desired goals. In my view, they must live with their choice.

¶23 Because the Amendment—and therefore the acknowledgment of debt contained within it—failed, I would affirm the division's conclusion that any attempt by Hutchins and Gasper to collect on the debt at issue would be time barred.

¶24 For these reasons, I respectfully dissent.

I am authorized to state that JUSTICE MÁRQUEZ and JUSTICE GABRIEL join in this dissent.