JUSTICE COATS
delivered the Opinion of the Court.
T1 Hutchins and Gasper petitioned for review of the court of appeals' judgment affirming the district court's ruling in favor of La Plata, in an action brought by La Plata to collect on certain debentures issued by Leadville Mining and foreclose on a deed of trust securing the debts. Although Lead-ville's authorized agent had signed documents acknowledging its obligations for the amounts owed on other similar debentures held by Hutchins and Gasper, which were secured by the same deed of trust, the court of appeals reasoned that because these documents lacked the two-thirds consent required for modification of the debentures, the acknowledgments included in them did not have the effect of extending the due date of the Hutchins and Gasper debentures, and therefore did not restart the limitations period for collection of the respective debts. The court of appeals therefore concluded, as had the district court, that the applicable statute of limitations had run on any action by Hutchins and Gasper to collect on the debts or foreclose on the deed of trust, leaving La Plata as the sole secured creditor.
T2 Because the documents in question were in writing, were signed by Leadville, and contained a clear and unqualified ac-knowledgement of the debt owed to Hutchins and Gasper, they constituted a new promise to pay, establishing a new acerual date and effectively extending the limitations period on collection of the debt, according to the statutes and case law of this jurisdiction, whether or not the documents in question also successfully modified the terms of the debentures. The judgment of the court of appeals is therefore reversed.
I.
¶ 3 In 2008, La Plata Mountain Resources, Inc., brought actions against Leadville Mining Corporation, Seot Hutchins, John Gasper, and other holders of debt instruments, denominated "debentures," [1] issued by Lead-ville, seeking to collect on those debentures held by La Plata and to foreclose on a deed of trust, which secured all of Leadville's outstanding debentures. La Plata also sought a determination that only it among the holders of the remaining outstanding debentures secured by the same deed of trust had filed within the applicable statute of limitations, and therefore that only it among the outstanding debenture holders had a secured position. Hutchins and Gasper held interest *584 in other of the debentures secured by the same deed of trust.
T4 The district court held a three-day bench trial, resulting in lengthy, undisputed factual findings. As relevant here, the district court found that Leadville owned hundreds of mining properties in Lake and Park Counties. In 1987, in an effort to obtain $8.3 million of operating cash, Leadville created fifteen convertible debentures secured by a single deed of trust encumbering the bulk of Leadville's properties, While the amount owed on each debenture varied according to the sum loaned by each investor, the debentures were otherwise identical, By the time of trial, some debentures had been converted to stock or released, but seven remained outstanding. The debentures were originally scheduled to mature and pay in full, with interest, on October 31, 1989, On several occasions, the holders gave consent to extend the maturity dates of the debentures, ultimately until December 81, 1997.
T5 At the time of trial, the parties each held some interest in the outstanding debentures. In 2002, as a form of compensation, several debenture holders transferred partial interests in five of the debentures to Hutceh-ins, a retired attorney who had served as CEO of Leadville, and Gasper, a mining engineer who had served as President of Lead-ville. Around the same time, La Plata, which the district court concluded, "was formed for the sole purpose of acquiring and enforcing the 1987 debentures," acquired interest in three of the debentures,
'I 6 In late 2008, Hutchins and Gasper were facing what the parties agreed was a six-year statutory bar to sue on the debt under the 1997 due date. According to the testimony at trial and trial exhibits, Hutchins was still working with Leadville to reopen the mines and worried that a suit to collect would jeopardize Leadville's refinancing efforts and lead to bankruptcy proceedings, Hutchins therefore retained counsel to draft doeu-ments to be executed by Leadville and the other debenture holders to postpone their deadline to sue. Aside from the particulars related to each holder, all of the documents were identical, The 2008 documents acknowledged the debt and purported to extend the maturity dates of the debentures and waive any defenses to collection that might otherwise be available to Leadville, While a number of debenture holders, including Hutehins and Gasper, signed the documents executed by Leadville, La Plata did not.
T7 It was not disputed that La Plata's action on the debt, which it filed in early 20083, fell within the limitations period. The primary issue litigated at trial was therefore whether the 2008 documents extended the limitations period for the other debenture holders, and the arguments focused on a term in the original debentures requiring for their modification the "consent of the holders of 66-%% in aggregate principal amount of the outstanding debentures."[2] Hutchins and Gasper contended that the term "principal amount" referred to the instrument's original stated amount to be repaid at maturity and therefore that Hutchins and the other consenting debenture holders collectively held more than 66 %% of the aggregate stated principal amount. By contrast, the district court interpreted the consent provision to require that the 66 %% be calculated based on the principal amount that remained unpaid at the time the holders were asked to agree to the proposed 20083 extension. Finding that some of the debentures had been converted to stock and were therefore no longer a debt owed by Leadvilie, the district court found that the signers of the 2003 documents did not meet the required percentage of outstanding debentures required for their modification.
18 The district court did not explicitly address the argument raised in the written submissions of Hutchins and Gasper to the effect that the 2008 documents separately contained a written and signed acknowledgment of the debt, and instead it simply ruled that as the result of the documents' failure to successfully modify the debentures, the limitations period ran in 2008, leaving La Plata *585 as the only holder of debentures secured by the deed of trust on Leadville's assets, On appeal Hutchins and Gasper renewed their assertion that the acknowledgments included in the 2008 documents themselves effectively restarted the limitations period, Although the court of appeals similarly focused on the two-thirds consent requirement and similarly found the 2008 documents invalid for failure to satisfy the requirements for modification of the debentures, it cursorily rejected the claim of extension by written acknowledgement of the debt, stating that the 2008 documents failed to extend the limitations period under that theory because they were not "solely" an acknowledgment of the debt, but were an unsuccessful attempt to modify the debentures. ~
T9 Hutchins and Gasper petitioned this court to review the court of appeals' rejection of its claim of extension of the due date by written acknowledgment.
II.
T10 A cause of action to collect a debt accrues when the debt becomes due. § 13-80-108(4), CRS. (2015). Since early common law, it has been universally accepted that a new promise to pay effectively removes the bar of any applicable statute of limitations by creating a new debt, with a new due date; and that a partial payment constitutes an implicit promise to pay. See Van Diest v. Towle, 116 Colo. 204, 179 P.2d 984, 987 (1947) (recounting in detail the history of the doctrine). The question precisely what cireumstances an acknowledgment of a debt, other than by partial payment, would constitute an implicit promise to pay suffi-client to create a new debt, with a new due date, had been the subject of debate and development over many years; however, at least by the time of Van Diest, this jurisdiction had come to align itself with what the Restatement (Second) of Contracts now refers to as the "modern rule"-that an acknowledgment is effective to extend the running of the statute of limitations, as long as it fairly implies a new promise. § 82, emt, c (1981).
{11 While the acknowledgement of the debt must be clear, to avoid "piling implication. upon implication," Van Diest, 179 P.2d at 988, and unqualified, in the absence of "accompanying cireumstances, which repel the presumption of a promise or intention to pay," id. such an acknowledgment of indebtedness is sufficient to constitute the requisite new promise, id.; see also Restatement (See-ond) of Contracts § 82(2) ("The following facts operate as such a promise unless other facts indicate a different intention: (a) A voluntary acknowledgment to the obligee, admitting the present existence of the antecedent indebtedness. . .."). In addition, for nearly a century, by statute in this jurisdiction, an acknowledgement or promise must be in writing and signed by the promisor "to take a case out of the operation of the statute of limitations." § 18-80-118, C.R.S. (2015). That an implicit promise to pay, either in the form of a partial payment, see, e.g., Hickerson v. Vessels, 2014 CO 2, ¶ 19, 316 P.3d 620, 625, or an acknowledgment meeting these conditions, see, e.g., Drake v. Tyner, 914 P.2d 519, 522 (Colo. App. 1996), will extend the statute of limitations has remained, largely unquestioned, the law of this jurisdiction.
T12 Further, because the theoretical basis for this proposition, or doctrine, is that the "new promise is sufficiently supported by the consideration of the past debt," Van Di-est, 179 P.2d at 989, such a promise need not appear as an enforceable agreement to 'be effective in extending the limitations period. Quite the contrary, although for evidentiary purposes it must be in writing and signed, to the extent the acknowledgment, or new promise to pay, were made conditional upon the fulfillment of some additional requirement or a promise in exchange for which it was given, it would fail the requirement that it be unqualified or unequivocal. It is generally vhelld that an implicit promise to pay only upon the fulfillment of some condition can become an unqualified promise to pay creating a new debt, with a new due date, only upon the fulfillment of that condition, See Restatement (Second) of Contracts § 91. At that point, the implicit promise would no longer be qualified,
1 183 Notwithstanding La Plata's contention to the contrary, by stating that "[Leadville] hereby acknowledges and agrees that the Current Holders ... are the holders of the Debenture" and "[Leadville] hereby confirms *586 and reaffirms that the Debenture (a) remains issued and outstanding ... and (d) is secured by the Modified Deed of Trust," the 2008 documents contain a clear and unqualified acknowledgment of Leadville's indebtedness. In the absence of any expression of unwillingness or even conditional willingness to pay, Leadville's acknowledgment of its debt and confirmation that the debt remains unpaid and continues to acerue interest constitutes the requisite implicit promise to pay. To the extent the ancient cases relied on by La Plata hold that in addition to an acknowledgment of an existing debt, some further promise or at least expression of intent or willingness to pay is required, those cases have not represented the law of this jurisdiction for more than a half-century.
{14 To the extent La Plata argues, as apparently the court of appeals believed to be the case, that Leadville's acknowledgment of its outstanding debts was nevertheless void and ineffective to renew the debt for the reason that it was included in a document failing in its purpose to modify the terms of the debentures, we find that argument unpersuasive. Whether, as La Plata contends but Hutchins disputes, the 2008 documents amounted to a contract, Leadville's acknowledgment of its debts was not equivocal or conditioned on the fulfillment of any condition by the debenture holders. By the same token, while the wording of the documents themselves lends support to Hutchins's assertion that the documents were drafted to include several separate and distinct legal bases permitting the debt holders to withhold collection efforts with impunity, it is at least clear from the language of the documents themselves that the acknowledgment is also not conditioned on the successful modification of the terms of the debentures. And to the extent the acknowledgment could somehow be considered given in exchange for a promise not to attempt collection before expiration of the existing limitations period, that condition would obviously have been fulfilled and no longer a qualification on the acknowledgment by the time the existing limitations period ran.
{15 Finally, to the extent La Plata suggests that regardless of any new promise to pay by Leadville, the date upon which the debentures would become due could not be changed without modifying the debentures according to their own terms, that theory was clearly not the basis of the court of appeals' ruling, which implied that an acknowledgment contained in a separate signed writing of its own may well have extended the limitations period, nor has that argument been sufficiently developed in this court. Whether or not parties might effectively limit collection of a debt to a period shorter than otherwise permitted by law, it is hardly self-evident that an agreement creating a debt implicitly nullifies the effect of a long-established doctrine of law governing the applicability of statutory limitations periods merely by specifying a due date and the requirements for modification of the agreement, and La Plata has offered no authority for such a proposition.
16 Because the documents in question were in writing, were signed by Leadville, and contained a clear and unqualified ac-knowledgement of the debt owed to Hutchins and Gasper, they constituted a new promise to pay, establishing a new accrual date and effectively extending the limitations period on collection of the debt, according to: the statutes and case law of this jurisdiction, whether or not the documents in question also successfully modified the terms of the debentures. In light of our determination that the lower courts erred in failing to find that Leadville's acknowledgment established a new accrual date for the outstanding debentures, we consider it unnecessary to address the claim of Hutchins and Gasper concerning waiver of Leadville's defenses.
IIL
€ 17 The judgment of the court of appeals is therefore reversed and the case is remanded for further proceedings consistent with this opinion.
JUSTICE HOOD dissents, and JUSTICE MARQUEZ and JUSTICE GABRIEL join in the dissent.

. A "debenture" is at times taken to refer to an unsecured debt. See, eg,, Black's Law Dictionary 486 (10th ed, 2014) ("A debt secured only by the debtor's earning power, not by a lien on any specific asset."). Because the debt instruments at issue here are self-designated as "debentures," and that terminology is used by the parties and lower courts, we continue to use it,

. It appears well-established, and was unconiest-ed, that tolling the statute of limitations on the debt also tolls the statute of limitations for foreclosure on the deed. See W.Q.F., Annotation, Part Payment or Acknowledgment of Indebtedness on Bond or Note as Tolling Statute on Mortgage Securing Same, 41 ALR. 822 (1926); Du Bois v. First Nat'l Bank, 43 Colo. 400, 96 P. 169, 171 (1908).