**NORTHGLENN URBAN RENEWAL AUTHORITY , Plaintiff–Appellant,**

v.

**Gil REYES , in His Official Capacity as Adams County Assessor; and Board of County Commissioners of the County of Adams, Defendants–Appellees.**

No. 12CA0130

Colorado Court of Appeals, Div. V.

Announced February 28, 2013

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2012.

Adams County District Court, No. 10CV1994, Honorable C. Scott Crabtree, Judge

Hayes, Phillips, Hoffman & Carberry, P.C., Jefferson H. Parker, Denver, Colorado, for Plaintiff–Appellant

Jennifer M. Wascak, County Attorney, Heidi M. Miller, Deputy County Attorney, Brighton, Colorado, for Defendants–Appellees

Opinion by JUDGE ROMÁN

¶ 1 In this case involving the financing of an urban renewal plan, plaintiff, Northglenn Urban Renewal Authority (NURA), appeals the trial court's summary judgment in favor of defendants, Gil Reyes, in his official capacity as Adams County Assessor (Assessor), and the Board of County Commissioners of the County of Adams (BOCC). We affirm in part, reverse in part, and remand with directions.

## I.  Background

¶ 2 In 1992, Northglenn City Council (City Council) approved an urban renewal plan created by NURA for the redevelopment of blighted areas.

¶ 3 The plan included tax increment financing (TIF). TIF is "a form of public funding that allows for the sale of municipal bonds to raise money for public improvements pursuant to the Colorado Urban Renewal Law, sections 31–25–101 to –115, [C.R.S.2012]." *City & County of Denver v. Block 173 Assocs.*, 814 P.2d 824, 827 (Colo.1991). This is accomplished by

first establishing a base amount upon which the various taxing authorities assess and collect their levies. This base amount is determined by assessing the value of the property within the urban renewal area prior to adoption of the urban renewal plan. Thereafter, the property is reas-

sessed in subsequent years for tax purposes in the hopes that the urban renewal plan has increased its value. After all levies are assessed and collected on the subsequent valuation, any incremental increase in the base amount is deemed the result of the urban redevelopment efforts by the municipality and is distributed to the urban renewal authority.

*East Grand County School Dist. No. 2 v. Town of Winter Park*, 739 P.2d 862, 864 (Colo.App.1987); see § 31–25–107(9), C.R.S. 2012.

¶ 4 In 2004, the City Council passed a resolution that substantially amended the urban renewal plan, pursuant to section 31–25–107(7) and (8), C.R.S.2012. The resolution added several tracts of new property to the Northglenn Urban Renewal Area and stated, "[T]he real property described above, shall, for all purposes, be part of the Northglenn Urban Renewal Area and subject to the provisions of the Northglenn Urban Renewal Plan."

¶ 5 No significant redevelopment activity occurred, however, on much of the newly added property from 2005 to 2009. Therefore, in 2009, the City Council passed another resolution to suspend TIF for those properties within the renewal area without active urban renewal projects.

¶ 6 In 2009, the Assessor calculated the TIF revenue by removing the suspended property from the total assessed value but including the suspended property in the base value. The Assessor also concluded that the TIF period for all properties, including the later added properties, would expire in 2017, a date twenty-five years after the effective date of the original 1992 renewal plan.

## II.  Relief Sought

¶ 7 NURA disagreed with the method used by the Assessor to calculate TIF following the TIF suspension. As applicable on appeal, NURA filed a complaint seeking mandamus relief pursuant to C.R.C.P. 106(a)(2) and a declaratory judgment that (1) the Assessor improperly calculated the base value of the property in the urban renewal area, and (2) the Assessor improperly shortened

the duration of the applicable TIF period for the additional properties.

¶ 8 The trial court denied C.R.C.P. 106(a)(2) relief primarily because the dispute involved the manner in which the Assessor calculated TIF revenues rather than the Assessor's refusal to act. *See* C.R.C.P. 106(a)(2) (providing mandamus relief to compel a governmental body or person "to perform an act which the law specially enjoins as a duty"); *Rocky Mountain Animal Def. v. Colorado Div. of Wildlife,* 100 P.3d 508, 517 (Colo.App.2004) ("mandamus relief can only command that an agency act").

¶ 9 Because we can resolve this appeal by addressing NURA's declaratory judgment claims, we need not address the C.R.C.P. 106(a)(2) claims.

## III. Standard of Review

■ ¶ 10 Initially, we resolve the parties' disagreement over the standard of review. NURA contends the issue is a matter of statutory interpretation subject to de novo review. Defendants assert that the Assessor's calculation of TIF is discretionary. The trial court, citing *Leavell – Rio Grande Central Associates v. Board of Assessment Appeals,* 753 P.2d 797, 799 (Colo.App.1988), reviewed the Assessor's duty under an abuse of discretion standard. *Id.* (because the method of valuation for taxation purposes "is a legislative function and is not a proper subject for judicial determination," a reviewing court is "limited to the narrow ascertainment of agency abuse of discretion by neglecting to abide by the statutes for calculating tax assessments").

■ ¶ 11 An assessor must consider three approaches in appraising real property, but the ultimate choice of valuation method is afforded deference. *See* § 39–1–103(5)(a)– (b), C.R.S.2012; *Creekside at DTC, Ltd. v. Board of Assessment Appeals,* 811 P.2d 435, 438 (Colo.App.1991). Likewise, there is a rebuttable presumption "that an assessor's ascertainment of value for taxation [is] correct." *Board of Assessment Appeals v. Sampson,* 105 P.3d 198, 204 (Colo.2005).

¶ 12 However, the question here does not turn on the valuation of a particular parcel of property. Rather, it concerns the Assessor's inclusion of certain property in calculating TIF. Because TIF is a formula created by statute, *see* § 31–25–107(9)(a), and adopted by the City Council in the renewal plan, our review of the statute and renewal plan involves legal questions subject to de novo review. *Block 173 Assocs.,* 814 P.2d at 829; *Sheridan Redevelopment Agency v. Knightsbridge Land Co.,* 166 P.3d 259, 262 (Colo. App.2007).

## IV. Suspension of TIF Calculation

■ ¶ 13 NURA contends the trial court erred in concluding that the Assessor appropriately calculated TIF following the suspension of TIF for those properties without active urban renewal projects.[1] We agree.

¶ 14 The applicable TIF statutory provisions state:

> That portion of the taxes which are produced by the levy at the rate fixed each year by or for each such public body upon the valuation for assessment of taxable property in the urban renewal area last certified prior to the effective date of approval of the urban renewal plan or, as to an area later added to the urban renewal area, the effective date of the modification of the plan ... shall be paid into the funds of each such public body....

§ 31–25–107(9)(a)(I), C.R.S.2012.

> That portion of said property taxes ... in excess of the amount of property taxes ... paid into the funds of each such public body ... shall be allocated to and, when collected, paid into a special fund of the authority....

§ 31–25–107(9)(a)(II), C.R.S.2012.

¶ 15 The statute also provides:

> The manner and methods by which the requirements of this subsection (9) are to be implemented by county assessors shall be contained in such manuals, appraisal procedures, and instructions, as applicable, that the property tax administrator is au-

---

1. Because the issue was not raised in a crossclaim, we do not separately address the Assessor's and BOCC's assertion that the statute does not allow for suspension of TIF.

thorized to prepare and publish pursuant to section 39–2–109(1)(e), C.R.S. [2012].

§ 31–25–107(9)(h), C.R.S.2012.

¶ 16 The parties agree that the statute is silent as to the TIF calculation of the renewal area when TIF is suspended for a portion of the property. They likewise agree that the assessor's manuals and appraisal procedures contain no provision for such a situation.[2]

¶ 17 When a statute is silent as to an issue, we interpret it according to the legislative intent and objectives. EE-21-21 Eng'g, Inc. v. Steve Stock & Assocs., Inc., 252 P.3d 36, 39 (Colo.App.2010); see Williams v. White Mountain Constr. Co., 749 P.2d 423, 428 (Colo.1988) ("In the face of statutory silence, questions of interpretation are governed by legislative intent."). To determine intent, courts look to the plain statutory language, giving words and phrases their commonly understood and accepted meaning. Smith v. Jeppsen, 2012 CO 32, ¶ 14, 277 P.3d 224 .

¶ 18 Here, in calculating TIF following the suspension, the Assessor removed the suspended properties from the total assessed value. However, the Assessor did not remove the suspended properties from the base value—that is, the value of the property in the urban renewal area last certified prior to the effective date of the modification of the urban renewal plan. See § 31–25–107(9)(a)(I).

¶ 19 NURA claims this calculation was error and describes its position as follows:

When property is subject to a TIF, its value is added to both the total value and the base value of all other property subject to the TIF. When property is no longer subject to a TIF, the reverse should occur. Its total value should be subtracted from the total value of all other property subject to the TIF and its base value should be subtracted from the base value of all other property subject to the TIF.

¶ 20 We agree with NURA that the Assessor's calculation frustrates the legislative intent of the statute because it fails to give effect to the statutory requirement that the portion of property tax in excess of the base amount be allocated to the authority. § 31–25– 107(9)(a)(II); see Board of Comm 'r s v. City of Broomfield, 7 P.3d 1033, 1036 (Colo.App.1999) ("Only the increases in the value of a property over the assessed base values go to the renewal authority.").

¶ 21 Of course, the primary legislative intent of the statute is to address slum and blighted areas. § 31–25–102(1), C.R.S.2012. In addition, however, the legislature intended to confer powers upon an urban renewal authority to further the public purpose of improving blighted areas and to expend public money in doing so. § 31–25–102(3), C.R.S. 2012. Included within those powers are the power to implement TIF and the power to modify a renewal plan in land area, timing, and procedure. § 31–25–107(7) & (9)(a).

¶ 22 Keeping those powers and purposes in mind, we conclude that a calculation that creates an imbalance in an authority's TIF by including property in the base value while removing the same property from the new assessed value impedes the goals of addressing and financing renewal of blighted areas. See Denver Urban Renewal Auth. v. Byrne, 618 P.2d 1374, 1382 (Colo.1980) ("The tax allocation structure has been carefully drafted so that there is a direct relationship between the increased valuation of property within the project area, and thus, increased ad valorem tax revenues, and the project financed by the bond issue.").

¶ 23 Accordingly, we conclude the trial court erred in determining the Assessor had discretion to calculate TIF in the manner performed.

2. We are required to determine a party's rights under a statute when, as here, there is an actual case or controversy presented involving that statute. C.R.C.P. 57(b); Villa Sierra Condo. Assoc. v. Field Corp., 878 P.2d 161, 164 (Colo.App. 1994). However, this division is essentially being called upon to craft legislation that does not exist, for a factual situation that is not discussed in the Colorado Urban Renewal Law. This type of function is much better executed by the General Assembly. We commend this case to the attention of the General Assembly, to determine whether our resolution comports with the statutory scheme it intended to create.

### V. Twenty–Five–Year Time Period

¶ 24 Next, NURA contends the trial court erred in concluding that the twenty-five-year period specified in section 31–25–107(9)(a) did not increase the TIF provision in the renewal plan for those properties added after the effective date of the plan. We disagree.

¶ 25 Again, our resolution of the issue requires us to interpret the statute and the urban renewal plan. We conduct such review de novo. *Sheridan Redevelopment Agency*, 166 P.3d at 262.

¶ 26 The statute provides:

[A]ny urban renewal plan, as originally approved or as later modified ... may contain a provision that taxes, if any, levied after the effective date of the approval of such urban renewal plan upon taxable property in an urban renewal area each year ... shall be divided for a period not to exceed twenty-five years after the effective date of adoption of such a provision....

§ 31–2 5–107(9)(a)(I). The key language in the statute regarding the twenty-five-year time limit includes:

- "taxes levied"
- "upon taxable property in an urban renewal area:"
- "shall be divided"
- "for a period not to exceed twenty-five years after the effective date of adoption of such a provision."

¶ 27 The Assessor and BOCC contend the key language is only "twenty-five years after the effective date of *adoption of such a* provision." (Emphasis added.) Therefore, they contend that because the TIF provision was adopted in 1992 and no new TIF provision was adopted in 2004 or 2008 when new property was added to the urban renewal area, the twenty-five-year period for the added property began in 1992.

¶ 28 Conversely, NURA contends this interpretation is too narrow, and instead, the time period for each property begins when that property is added.

¶ 29 The plain statutory language creates a reference date based on the effective date of adoption of a TIF provision. The trial court determined, and we agree, that the City Council could have altered the timing of the TIF provision for the newly added properties. *See* § 31–25–107(7) (contemplating that a modification could change the renewal plan in land area, land use, timing, or procedure). Indeed, the statutory language allows the modification to contain a TIF provision because it states, "[A]ny urban renewal plan, as originally approved or *as later modified* ... may contain a provision [allocating TIF]." § 31–24–107(9)(a) (emphasis added).

¶ 30 However, the express language in the 2004 resolution states, "[T]he real property described above, shall, for all purposes, be part of the Northglenn Urban Renewal Area and subject to the provisions of the Northglenn Urban Renewal Plan." The TIF provision in the 1992 approved renewal plan states, "The property tax ... shall be divided according to Colorado law, for a period of twenty-five years from the effective date of this Plan."

¶ 31 The plain statutory language requires that the 1992 TIF provision control:

Upon the approval by the governing body of an urban renewal plan or a substantial modification thereof, the provisions of said plan with respect to the land area, land use, design, building requirements, timing, or procedure applicable to the property covered by said plan shall be controlling....

§ 31–25–107(8).

¶ 32 Accordingly, we agree with the Assessor and BOCC that the plain language of the statute and the renewal plan requires that TIF terminate in 2017, a date twenty-five years from the effective date of the original TIF provision, 1992.

¶ 33 That part of the trial court's summary judgment regarding the Assessor's calculation of TIF is reversed, that part regarding the twenty-five-year TIF expiration is affirmed, and the case is remanded to the trial court to order a new TIF calculation based on the conclusions expressed in this opinion.

JUDGE TERRY and JUDGE VOGT * concur.