Opinion by JUDGE ASHBY
¶ 1 This is an appeal from two separate proceedings. In the first, Steven Fritzler appeals from the trial court's judgment in favor of Cheryl Mitchell, the personal representative (PR) of the Estate of Edward J. Fritzler. In the second, the PR and the Estate appeal from the court's order denying attorney fees and partially denying costs. We are asked, as a matter of first impression, to decide whether the trial court properly concluded that, if fees could not be awarded under section 13-17-102, C.R.S. 2016, it also could not award attorney fees to the PR under its equitable authority. We affirm.
I. Background
¶ 2 Edward J. Fritzler (Ed) and his wife, Mary Eileen Fritzler, executed numerous wills during the last ten years of their lives. The last will was drafted just a few years before they each passed away. In all of the wills, the Fritzlers sought to distribute their farm in a generally equitable manner among their five children: Dean Fritzler, Kenneth Fritzler, Steven Fritzler, Glen Fritzler, and Cheryl Mitchell. The last will significantly increased Glen's inheritance and decreased Steven's.
¶ 3 As a result, Steven contested the will. He asserted that the will was invalid due to *167 Glen's undue influence and because Ed lacked testamentary capacity. After a lengthy trial, a jury concluded that the will was valid. Steven appeals.
¶ 4 Following the verdict, the Estate and Cheryl, as PR, sought attorney fees and costs under section 13-17-102 and C.R.C.P. 54(d). The court denied an award of attorney fees because it found that the case was "close" and that, even though he lost, Steven's claims did not lack substantial justification as required under section 13-17-102. The court further concluded that it did not have equitable authority to grant fees without concurrent statutory authority. It then partially granted and partially denied costs. Only the costs that were denied have been appealed.
II. Admission of Evidence
¶ 5 Steven contends that the trial court abused its discretion by excluding Ed's hospital medical records under CRE 803(6). We agree that the exclusion was an abuse of discretion, but we perceive no basis for reversal because the error was harmless.
¶ 6 We review the trial court's decision to exclude evidence for an abuse of discretion. See Genova v. Longs Peak EmergencyPhysicians, P.C. , 72 P.3d 454, 458 (Colo. App. 2003). A court abuses its discretion where its decision is manifestly arbitrary, unreasonable, or unfair, or misapplies the law. Id.
¶ 7 Because the claim of error is preserved, we review any error using a harmlessness standard. See C.A.R. 35(c). Under this standard, an error is harmless where it does not affect the substantial rights of the parties. Id. ; see Laura A. Newman, LLC v. Roberts , 2016 CO 9, ¶ 24, 365 P.3d 972 ("[A]n error affects a substantial right only if 'it can be said with fair assurance that the error substantially influenced the outcome of the case or impaired the basic fairness of the trial itself.' " (quoting Bly v. Story , 241 P.3d 529, 535 (Colo. 2010) )) (emphasis omitted); Rojhani v. Meagher , 22 P.3d 554, 557 (Colo. App. 2000) ("Harmless error occurs with respect to the admission or exclusion of evidence when no substantial right of a party is affected. A substantial right is affected if the error substantially influences the outcome of the case.") (citation omitted).
¶ 8 Steven argued that the medical records were admissible because the hospital records custodian laid a sufficient foundation for their admissibility under the business records exception to the hearsay rule. Hearsay is "a statement other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." CRE 801(c). Hearsay evidence is generally inadmissible. CRE 802. However, CRE 803(6) provides an exception to this general rule by allowing admission of business records if the following requirements are met:
(1) the document must have been made "at or near" the time of the matters recorded in it; (2) the document must have been prepared by, or from information transmitted by, a person "with knowledge" of the matters recorded; (3) the person or persons who prepared the document must have done so as part of a "regularly conducted business activity"; (4) it must have been the "regular practice" of that business activity to make such documents; and (5) the document must have been retained and kept "in the course of" that, or some other, "regularly conducted business activity."
Schmutz v. Bolles , 800 P.2d 1307, 1312 (Colo. 1990) (citation omitted). The trial court excluded the records because it determined that the records custodian was not able to testify that the records were prepared by, or from information transmitted by, a person with knowledge.
¶ 9 In Henderson v. Master Klean Janitorial, Inc. , 70 P.3d 612 (Colo. App. 2003), a division of this court held that a report promptly made from information transmitted by a person with knowledge is admissible if the report is kept in the course of a regularly conducted business activity and it is the regular practice of the business to make such a report, as shown by the testimony of the custodian or other qualified witness, unless "the source of information or the method or circumstances of preparation indicate lack of trustworthiness." Id. at 617 (quoting CRE 803(6) ); see *168 Teac Corp. of Am. v. Bauer , 678 P.2d 3 (Colo. App. 1984). In other words, even if the identity of a person whose firsthand knowledge is the basis of a particular entry in a business record cannot be established, the record custodian's knowledge is adequate and such records are admissible. And a custodian's lack of personal knowledge concerning the accuracy of information contained in business records would affect only the weight of evidence, not its admissibility. People v. Holder , 632 P.2d 607, 609 (Colo. App. 1981).
¶ 10 Therefore, even though the records custodian could not identify every source of information contained in the hospital records and she did not create the records herself, Teac permits the report's admission under CRE 803(6). Based on the custodian's testimony, each record entry was transmitted by a person with knowledge; each report was kept in the course of a regularly conducted business activity of the hospital; it was the regular practice of the hospital to make such reports; and nothing indicated a lack of trustworthiness of the reports. Further, the trial court excluded the hospital records even though many of the documents within the one unified exhibit contained identifying information and/or at least an electronic signature of the person who prepared the report.
¶ 11 Thus, we conclude that the custodian's lack of personal knowledge might have affected the weight afforded the hospital record evidence, but not its admissibility, and the court therefore abused its discretion by excluding the hospital records. However, we further conclude that the error was harmless.
¶ 12 If evidence that is excluded was also presented through other testimony or admitted evidence, any error in excluding the cumulative evidence is harmless and does not constitute reversible error. Knowles v. Bd. of Educ. , 857 P.2d 553, 555-56 (Colo. App. 1993) ; see Hock v. N.Y. Life Ins. Co. , 876 P.2d 1242, 1254 (Colo. 1994).
¶ 13 In this instance, the excluded medical records were cumulative of other admitted evidence. Steven testified at length about the deterioration of his father's mental and physical health over time, especially in 2010 and 2011. Ed's caretakers also testified to his physical and mental decline in 2011 and 2012. Medical records, including some of the excluded hospital records, were admitted through Ed's primary care physician, Dr. Kennedy. Records from the neurological center that evaluated and treated Ed were also admitted through the center's records custodian.
¶ 14 Further, the testimony and detail regarding the admitted records of Ed's physical and mental conditions and related treatment met or exceeded the level of information in the excluded records. Dr. Kennedy testified extensively about Ed's physical and mental health in 2010 and 2011, including his vascular dementia, white matter disease (stroke on microscopic level), parkinsonism, chronic depression, anxiety disorder, macular degeneration, bladder problems, cognitive testing, dizziness, upper respiratory infections, deterioration of motor skills, lightheadedness, hospitalization from February 13 through 16, 2011, and follow-up rehabilitation. The excluded medical record evidence did not therefore unfairly limit the jury's ability to consider Ed's physical and mental condition and its impact on his testamentary capacity or vulnerability to influence.
¶ 15 Therefore, we conclude that although the trial court erred by denying admission of the records through the records custodian, the error was harmless and we need not reverse.
III. Jury Instructions
¶ 16 Steven contends that the trial court erred by refusing to instruct the jury on the presumption of undue influence. We disagree.
¶ 17 We review jury instructions as a whole to determine if they accurately instructed the jurors on the applicable law. Vititoe v. Rocky Mountain Pavement Maint., Inc. , 2015 COA 82, ¶ 67, 412 P.3d 767. However, we review for an abuse of discretion the court's decision to grant or deny the giving of a particular instruction. Chapman v. Harner , 2014 CO 78, ¶ 4, 339 P.3d 519.
*169 ¶ 18 A party raises a rebuttable presumption, such as the presumption of undue influence, when he introduces certain facts into evidence. Krueger v. Ary , 205 P.3d 1150, 1154-55 (Colo. 2009). Once raised, the presumption shifts to the other party the burden of going forward with evidence to disprove the presumption. Id. at 1154. If the party is able to present such evidence, then the presumption can no longer be established as a matter of law, and it does not continue in the case. Id. at 1154, 1156. Accordingly, once evidence has been presented that disproves the presumption, instructing the jury on the presumption is improper. Id. at 1156.
¶ 19 We note that Steven asserts in his opening brief that to rebut a presumption, the opposing party must completely negate it. This is incorrect. The cases he cites and our own research indicate that evidence must negate a presumption when the matter is being decided on a motion for directed verdict; however, this high standard is not required during the normal course of trial. See id. at 1154 ("A rebuttable presumption shifts only the burden of going forward with evidence, and does not shift the entire burden of proof.").
¶ 20 Steven alleged that Ed was unduly influenced by Glen when he executed his most recent and final will. In support thereof, he presented evidence of Ed's declining mental and physical health. He also presented evidence that during the relevant period, Ed experienced increased confusion and memory loss. To rebut this presumption, the PR presented evidence that the will was drafted over the course of several weeks; that numerous people, including Ed's attorney, were involved in its drafting; and that Glen was only briefly present in the first meeting where the possible changes to the will were discussed. The PR also presented evidence that despite Ed's failing health, he knew what this latest will would mean and how it would affect his other children's inheritance. Finally, she presented evidence that this last will was in keeping with what Ed and his wife had always said they wanted for the family farm; that is, that it would remain a working farm and remain in their family.
¶ 21 We agree with the trial court that this evidence was sufficient to disprove the presumptions of unfairness and undue influence as a matter of law. See, e.g. , People v. Hoskin , 2016 CO 63, ¶ 11, 380 P.3d 130 ; Krueger , 205 P.3d at 1156. The jury was still entitled, and in fact required, to consider the evidence presented in reaching its verdict. See Krueger , 205 P.3d at 1153-54. And the jury was instructed that it could, but was not required to, infer that the will was signed under undue influence if the jury found certain facts to be true by a preponderance of the evidence. However, because the undue influence presumption had been sufficiently rebutted by competent evidence, it would have been improper for the court to instruct the jury thereon as Steven argues it should have. See id. at 1156. Accordingly, we conclude that the trial court did not abuse its discretion in declining to give Steven's proposed presumption instruction.
IV. Cross-Appeal Issues
¶ 22 Because we have concluded that neither of Steven's contentions warrants reversal, we need not address the PR's cross-appeal issues regarding the propriety of certain jury instructions. See Northglenn Urban Renewal Auth. v. Reyes , 2013 COA 24, ¶ 9, 300 P.3d 984.
V. Attorney Fees and Costs
¶ 23 In the second appeal, the PR contends that the trial court erred by denying her request for attorney fees and by denying certain costs-specifically, the costs of (1) video depositions of two key witnesses; (2) a court reporter for trial; (3) purchasing rough transcripts for use during trial; and (4) purchasing a real-time feed. We perceive no error.
¶ 24 Here, the PR requested an award of attorney fees under section 13-17-102, and she requested her costs as the prevailing party under C.R.C.P. 54(d). We generally review the trial court's decision regarding an award of fees and costs for an abuse of discretion. See S. Colo. Orthopaedic Clinic Sports Med. & Arthritis Surgeons, P.C. v. Weinstein , 2014 COA 171, ¶ 8, 343 P.3d 1044 ; see also *170 Beren v. Beren , 2015 CO 29, ¶ 12, 349 P.3d 233 ("The power to fashion equitable remedies lies within the discretion of the trial court."). However, whether attorney fees are recoverable at all is a question of law, which we review de novo. See Beren , ¶ 11 ("We review de novo questions of law concerning the construction and application of statutes."); First Citizens Bank & Tr. Co. v. Stewart Title Guar. Co. , 2014 COA 1, ¶ 32, 320 P.3d 406.
A. Attorney Fees
¶ 25 The PR asserts that the court should have awarded attorney fees to her by exercising its equitable authority, regardless of section 13-17-102. We have found no legal authority for this position.
¶ 26 In awarding attorney fees, Colorado courts generally follow the American Rule, which provides that, unless otherwise specified by contract, rule, or statute, each party is responsible for its own attorney fees. Allstate Ins. Co. v. Huizar , 52 P.3d 816, 818 (Colo. 2002) ("In the absence of an express statute, court rule, or private contract to the contrary, attorney fees generally are not recoverable by the prevailing party in a contract or tort action."); First Citizens Bank , ¶ 35. One notable exception to this rule is section 13-17-102(4). This section provides that a prevailing party may recover attorney fees from the other party where the other party's claims were substantially groundless, substantially frivolous, or substantially vexatious.
¶ 27 Here, the trial court noted that this was a close case and found that even though Steven did not prevail, his claims were not groundless, frivolous, or vexatious. It then concluded that it would not award fees under section 13-17-102. We conclude the court did not err by denying fees.
¶ 28 Section 15-10-103, C.R.S. 2016, provides that "[u]nless displaced by the particular provisions of this code, the principles of law and equity supplement its provisions." And section 15-10-605(1), C.R.S. 2016, recognizes that a probate court may award fees if "such proceedings were brought, defended, or filed in bad faith." We conclude that, together, these specific sections displace the probate court's general equitable authority, thereby limiting the court's ability to award attorney fees absent some form of bad faith. See Beren , ¶¶ 18, 19-20 (stating that specific provisions of the Probate Code displace the court's equitable authority under the more general provision).
¶ 29 The PR asserts that because the probate court is a court of equity, it should be able to award fees and costs using equitable principles, despite any statutory limitations. In support thereof, she directs us to Estate of Leslie v. Leslie , 886 P.2d 284 (Colo. App. 1994).
¶ 30 In Estate of Leslie , a division of this court affirmed the trial court's award of attorney fees and costs against the petitioner's distributive share of the inheritance. Id. at 288. It did so after finding that "[m]uch of petitioner's conduct in initiating and prosecuting needless and insubstantial litigation has resulted in the frustration of [the purpose of the Probate Code to promote a speedy and efficient process for settling disputes] and the possible depletion of the assets of the estate." Id. The court also noted the applicability of section 13-17-102 because the petitioner's claims and litigation lacked substantial justification. Id. at 287. Thus, even though the division used its equitable authority to determine how to apply the fees and cost award, its ability to apply fees and costs at all was derived from the statutory authority provided by section 13-17-102. We find that holding inapplicable here, where both the trial court and this court have concluded that Steven's claims were not lacking substantial justification.
¶ 31 Similarly, the out-of-state cases the PR cites in support of her position are either inapplicable or are based on an initial finding that the claims lacked substantial justification, meaning they were frivolous, vexatious, or in bad faith, before the court used its equitable authority to award costs against only the petitioner's share. See Rudnick v. Rudnick , 179 Cal.App.4th 1328, 102 Cal.Rptr.3d 493, 495 (2009) ("The court concluded that appellants' opposition to the petition was not made in good faith.... The court found that appellants created unnecessary delays and asserted disingenuous arguments *171 causing the [trust] to incur significant legal expenses."); Estate of Ivey v. DiLeonardo , 22 Cal.App.4th 873, 28 Cal.Rptr.2d 16, 17, 21 (1994) (awarding costs against the petitioner's share of a trust because his claims were "frivolous and in bad faith"); In re Estate of Campbell , 46 Haw. 475, 382 P.2d 920, 954 (1963) (similarly finding that litigation was unnecessary, so costs could be awarded against the beneficiary who brought frivolous claims); Webbe v. First Nat'l Bank & Tr. Co. of Barrington , 139 Ill.App.3d 806, 93 Ill.Dec. 886, 487 N.E.2d 711, 714 (1985) ("[P]laintiff's action was groundless and brought without reasonable cause."); see also Boston Safe Deposit & Tr. Co. v. Stone , 348 Mass. 345, 203 N.E.2d 547, 554 (1965) (dealing with valuation and distribution of a portion of a trust and how administrative and legal costs should be divided from trust assets; thus, not applicable here); Litcher v. Tr. Co. of N.J. , 11 N.J. 64, 93 A.2d 368, 378 (1952) (not discussing issue; court merely affirmed lower court's award without providing any reasoning or authority). Therefore, we find these cases unpersuasive here.
¶ 32 Accordingly, we conclude that the trial court did not abuse its discretion in denying the PR's request for attorney fees here.
B. Costs
¶ 33 Rule 54(d) permits a court to award the prevailing party its reasonable costs of litigation, "considering any relevant factors which may include the needs and complexity of the case and the amount in controversy." Here, the parties agreed to the majority of the requested costs. As to the remaining, contested costs, the court held a hearing. Thereafter, the court concluded that although the PR was entitled to an award of most of the costs she had requested, she was not entitled to all of them. As will be discussed below, the court found that some of the disputed costs were luxuries and, therefore, were not reasonable. The PR challenges this ruling.
1. Videographer
¶ 34 The PR video-recorded the depositions of two of its key witnesses: Ed's primary care physician and the attorney who drafted his wills.
¶ 35 C.R.C.P. 30(b)(2) provides that the deposing party may record a deposition by "sound, sound-and-visual, or stenographic means." However, unless otherwise ordered by the court, "the party taking the deposition shall bear the cost of the recording." C.R.C.P. 30(b)(2). Several Colorado courts have further noted that a video deposition is a luxury and that no party has an absolute right to one. See Cherry Creek Sch. Dist. No. 5 v. Voelker , 859 P.2d 805, 809-10 (Colo. 1993) ; Dorrance v. Family Athletic Club , 772 P.2d 667, 668 (Colo. App. 1989).
¶ 36 Here, the court explained the various circumstances it considered before concluding that the video depositions were not reasonable and denying the associated costs; specifically, the PR did not notify the court that she perceived she needed to video-record the depositions and did not even subpoena Ed's doctor. Also, both witnesses ultimately testified at trial. And the court granted an award of costs for the depositions other than the cost of the videographer. Accordingly, we conclude the court did not abuse its discretion in denying those costs here. See Cherry Creek Sch. Dist. , 859 P.2d at 810.
2. Court Reporter, Rough Transcripts, and Real-Time Feed
¶ 37 Section 13-16-122(1)(d), C.R.S. 2016, permits the court to award to the prevailing party "[a]ny fees of the court reporter for all or any part of a transcript necessarily obtained for use in this case." We note, however, that a court always maintains discretion whether to grant certain costs, and thus this statute does not require the court to award costs.
¶ 38 Here, the trial court was equipped with a For the Record (FTR) electronic recording device. Nonetheless, the PR chose to hire a court reporter for trial. The PR expressed concern about the quality of the FTR recording and subsequent transcript, particularly for appellate purposes. The PR also incurred costs for obtaining rough transcripts *172 and a real-time feed for use during the trial.
¶ 39 In denying these costs, the court noted that the FTR typically records everything and results in a good-quality recording. It also noted that several attorneys and legal staff at counsel table were available to take notes and help the team remain organized. The court further noted that it was taking its own notes and was easily able to keep up with what was happening. Further, by employing the court reporter, the PR actually required Steven to incur more costs to obtain transcripts than if she had just used the FTR device. Thus, the court concluded that these costs were also luxury expenses that were not necessary for trial.
¶ 40 Although the PR points to First Citizens Bank to support her position that the cost of a court reporter is a reasonable expense, we are not persuaded. Id. at ¶ 54. In that case, we do not know whether there was some other available means to record the trial. And we note that simply because a cost is reasonable in one case does not mean it is always reasonable. Determining the reasonableness and necessity of costs is within the trial court's discretion and will vary on a case-by-case basis. And, based on the court's express reasoning, we cannot conclude it abused its discretion by denying that cost here.
¶ 41 Therefore, we conclude that the trial court did not abuse its discretion by denying the costs specified above.
VI. Conclusion
¶ 42 The trial court's judgment and orders are affirmed.
Taubman and Casebolt* , JJ., concur

Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5 (3), and § 24-51-1105, C.R.S. 2016.